UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

KY LE,

           Plaintiff,

v.

CITY OF TIGARD, an Oregon municipal corporation, SAMBO KIRKMAN, acting under color of state law, in her individual capacity and in her official capacity as Community Development Director of the City of Tigard, and DANELLE HAUTHER, acting under color of state law, in her individual capacity and in her official capacity as Economic Development Director of the City of Tigard,

           Defendants.

Case No. 3:25-cv-01521-AR

**ORDER TO AMEND**

**ARMISTEAD, Magistrate Judge**

       Plaintiff Ky Le, representing himself, sues defendants City of Tigard, Tigard Community Development Director, Sambo Kirkman, and Tigard Economic Development Director, Danelle Hauther under 42 U.S.C. § 1983. Ky leases and operates a food cart pod called "Baller Park" in

Tigard, Oregon. Ky opened Baller Park in 2023 with the intention of eventually renting to 20 food carts. But in January 2025, Tigard passed Ordinance 25-01, which restricted the number of food carts in any pod to three total. Ky contends that defendants retroactively applied Ordinance 25-01 to Baller Park, despite previous assurances that it would be exempt from the "three-cart rule" because development was already underway. Ky filed an appeal with the Oregon Land Use Board of Appeals (LUBA) in April 2025, although the status of that appeal is unknown.

Ky alleges that defendants' retroactive application and enforcement of Ordinance 25-01 amounts to an unconstitutional regulatory taking. He also asserts that defendants violated his due process rights and retaliated against him in violation of his right to free speech. Ky seeks declaratory, injunctive, and monetary relief, including $2.5 million in damages for defendants' alleged taking. The court's review of Ky's request to proceed *in forma pauperis* (IFP) reveals that he cannot afford the filing fee and his IFP request (ECF 1) is therefore GRANTED. Yet Ky's complaint lacks sufficient detail regarding his LUBA appeal. For this lawsuit to go forward, Ky must timely file an amended complaint that corrects the deficiencies identified in this order.

## FACTUAL BACKGROUND

In September 2023, Ky entered into a lease-purchase agreement to develop a food cart pod in Tigard, Oregon. The agreement required Ky to purchase the property for $850,000 within 24 months and included a 15-year lease in the event the property could not be developed as planned. In the short term, Ky intended to build a food cart pod suitable for 15-20 food carts. In the long term, Ky planned to build a commercial office or hotel. (Compl. ¶¶ 22-23, ECF 2.)

Before signing the agreement, Ky consulted with city staff regarding his plans. Ky alleges that he received "explicit assurances" from Tigard city planners that there was no limit on the

number of food carts allowed in a pod. (*Id.* ¶ 22.) Ky "rel[ied] on those assurances" when he recruited vendors and made infrastructure improvements. (*Id.* ¶ 27.) Ky recruited three food carts to start, and Baller Park operated for nearly a year without issue. (*Id.* ¶ 28.)

In April 2024, Ky began working with Tigard city planners on expanding Baller Park and adding nine more carts. During that time, he learned that Tigard intended to limit food cart pods to three carts total. When he asked how that proposed rule would affect Baller Park, Ky alleges that "multiple planners" told him it would not apply to his pod because it was "already in active development and vested." (*Id.* ¶¶ 28-29.)

But while two new Baller Park carts were waiting on approvals from the county, Ky alleges that defendant Hauther started to employ "coercive tactics." (*Id.* ¶ 30.) According to Ky, Hauther threatened to withhold those food carts' licenses if Ky did not sign a Temporary Use Application modifying Baller Park to a five-cart pod. Ky believed Hauther was attempting to "lock" him into a nonconforming use of only five carts, rather than the 20 he had planned for. (*Id.* ¶¶ 30-32.) Ky refused to comply. (*Id.* ¶ 33.)

Ky met with Hauther and defendant Kirkman to discuss the future of Baller Park in September 2024. In the meeting, Kirkman and Hauther again instructed Ky to submit a modification application for just two additional carts. To justify her position, Kirkman identified two permit violations that were, in Ky's view, minor and pretextual. (*Id.* ¶ 34-36, 60.) Ky described Kirkman's demeanor during the meeting as "hostile." (*Id.* ¶ 34.) Later, Ky received a "coercive" email from a Tigard city planner informing him that pending licenses would not issue unless he submitted the Temporary Use Application as directed. (*Id.* ¶ 35.)

Page 3 – ORDER TO AMEND
*Ky v. City of Tigard, et al.*, 3:25-cv-01521-AR

number of food carts allowed in a pod. (*Id.* ¶ 22.) Ky "rel[ied] on those assurances" when he recruited vendors and made infrastructure improvements. (*Id.* ¶ 27.) Ky recruited three food carts to start, and Baller Park operated for nearly a year without issue. (*Id.* ¶ 28.)

In April 2024, Ky began working with Tigard city planners on expanding Baller Park and adding nine more carts. During that time, he learned that Tigard intended to limit food cart pods to three carts total. When he asked how that proposed rule would affect Baller Park, Ky alleges that "multiple planners" told him it would not apply to his pod because it was "already in active development and vested." (*Id.* ¶¶ 28-29.)

But while two new Baller Park carts were waiting on approvals from the county, Ky alleges that defendant Hauther started to employ "coercive tactics." (*Id.* ¶ 30.) According to Ky, Hauther threatened to withhold those food carts' licenses if Ky did not sign a Temporary Use Application modifying Baller Park to a five-cart pod. Ky believed Hauther was attempting to "lock" him into a nonconforming use of only five carts, rather than the 20 he had planned for. (*Id.* ¶¶ 30-32.) Ky refused to comply. (*Id.* ¶ 33.)

Ky met with Hauther and defendant Kirkman to discuss the future of Baller Park in September 2024. In the meeting, Kirkman and Hauther again instructed Ky to submit a modification application for just two additional carts. To justify her position, Kirkman identified two permit violations that were, in Ky's view, minor and pretextual. (*Id.* ¶ 34-36, 60.) Ky described Kirkman's demeanor during the meeting as "hostile." (*Id.* ¶ 34.) Later, Ky received a "coercive" email from a Tigard city planner informing him that pending licenses would not issue unless he submitted the Temporary Use Application as directed. (*Id.* ¶ 35.)

But Ky still refused to comply. Instead, he submitted his original application for a 20-cart pod—an application he claims was ignored. When Ky asked Kirkman for a formal letter of determination so he could seek review of that decision, Kirkman allegedly refused. Ky was "held in limbo" until January 2025, when the Tigard City Council passed Ordinance 25-01, officially restricting the number of food carts in any new pod to three total. (*Id.* ¶¶ 36-37, 40.)

Tigard passed Ordinance 25-01 as an emergency ordinance. In Ky's view, there was no justification for emergency treatment. (*Id.* ¶ 40.) Ky alleges that staff pushed City Councilors to pass Ordinance 25-01 as an emergency in an effort to bypass the typical 30-day referendum period and "cut off appeal." (*Id.* ¶ 40.) He alleges that staff, in pursuit of that effort, deliberately misled City Councilors. For example, staff attributed the "emergency" to the high number of food carts waiting for licenses, although according to Ky, there were no pending food cart applications at the time. (*Id.* ¶ 60.) Ky also alleges that he did not receive notice of the January City Council meeting or have a meaningful opportunity to be heard. (*Id.* ¶¶ 43-44.)

Ky filed a Tort Claim Notice, as well as a LUBA appeal in April 2025. (*Id.* ¶ 46, 89.) Ky alleges that, after he filed his appeal, Hauther and Kirkman visited Baller Park three times without notice. Ky described these site visits as "unlawful" and perceived them as "retaliation" for his LUBA petition. (*Id.* ¶ 46.) Tigard moved to dismiss Ky's petition, but LUBA denied that motion. (*Id.* ¶ 61.) The status of Ky's LUBA appeal is not clear on the face of his complaint.

## LEGAL STANDARDS

The court screens cases when a plaintiff is proceeding without prepayment of fees based on an inability to pay them—that is, when a plaintiff proceeds *in forma pauperis*. For *in forma pauperis* cases, Congress directs that "the court shall dismiss the case at any time if the court

determines that" the action is: (1) "frivolous or malicious;" (2) "fails to state a claim on which relief may be granted;" or (3) "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). The court's screening obligation includes determining whether a plaintiff's claims are capable of being tried by this court, or in other words, are cognizable claims.[1]

The court is generous in construing the pleadings of self-represented plaintiffs, giving the plaintiff the benefit of doubt. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Self-represented plaintiffs are "entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (per curiam). "Although a *pro se* litigant . . . may be entitled to great leeway when the court construes his pleadings, those pleadings nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong." *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995).

## DISCUSSION

Ky's complaint states that he filed an appeal with LUBA in April 2025. He included his LUBA file number (No. 2025-018) but did not attach any LUBA orders to his complaint. (Compl. ¶ 88.) Ky did not provide any details about that appeal besides noting that LUBA denied

---

[1] *See, e.g.*, *O'Neal v. Price*, 531 F.3d 1146, 1151 (9th Cir. 2008) ("After a prisoner applies for *in forma pauperis* status and lodges a complaint with the district court, the district court screens the complaint and determines whether it contains cognizable claims. If not, the district court must dismiss the complaint."); *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) ("[S]ection 1915(e) applies to all *in forma pauperis* complaints, not just those filed by prisoners.").

Tigard's motion to dismiss. (*Id.* ¶ 61.) Consequently, the court cannot discern the current status of the appeal. The details of Ky's appeal, such as the claims he asserted, are also unknown.

A federal court typically may not interfere in ongoing state court and administrative proceedings. This principle, known as *Younger* abstention, is based on the interests of comity, federalism, and economy and is appropriate when: (1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) there is an adequate opportunity for the federal plaintiff to raise constitutional challenges in the state proceeding; and (4) the federal court action, in essence, would enjoin the state proceeding. *Page v. King*, 932 F.3d 898, 901-02 (9th Cir. 2019) (internal quotation and citation omitted). In extraordinary circumstances, such as bad faith or harassment – not evident here – abstention may be inappropriate. *Id.* at 902; *Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 617 (9th Cir. 2003) (holding that *Younger* abstention applies to ongoing state administrative proceedings).

If a state court proceeding has been resolved, Ky cannot challenge a state court judgment in federal court. Under what is known as the *Rooker–Feldman* doctrine, federal district courts lack subject matter jurisdiction over lawsuits that are, in effect, appeals from state court judgments. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 415 (1923); *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003). A federal lawsuit may be an improper appeal where the federal claims raised are intertwined with a state court judgment. *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008). This occurs where a federal lawsuit requests relief that would effectively reverse a state court decision or void its ruling. *Fontana Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987, 992 (9th Cir. 2002); *see also Bianci v. Rylaarsdam*, 334 F.3d 895, 901 (9th Cir. 2003) ("[T]he *Rooker-Feldman*

doctrine is not limited to claims that were actually decided by the state courts, but rather it precludes review of all state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." (quotation marks omitted)).

On the face of Ky's complaint, it is unclear whether LUBA has issued a Final Opinion and Order or if Ky's appeal is ongoing. If Ky files an amended complaint, he must include additional details pertaining to his LUBA appeal and any related state proceedings so that the court can ensure its own jurisdiction, or authority, to resolve his case. If LUBA has issued a final order and Ky wishes to appeal that decision, he may seek judicial review through filing a petition in the Oregon Court of Appeals. ORS § 197.850. This court has no power to review a state agency's or state court's decisions.

## CONCLUSION

To avoid dismissal of his lawsuit, Ky must file an **amended complaint** by **Wednesday, October 15, 2025**, with enough detail for the court to determine whether it must abstain from intervening in Ky's LUBA appeal. If Ky fails to do that, the court may dismiss this action. Ky's request for leave to appear *in forma pauperis* (ECF 1) is GRANTED, however, the Clerk of Court must not issue process until further order of the court.

DATED: September 15, 2025

_____
JEFF ARMISTEAD
United States Magistrate Judge